3.14.0661 People in the state of Illinois get the lead by Richard Leonard v. Tony Harris, appellate by Jessica Ware May it please the court, my name is Jessica Ware and I'm on behalf of the Office of the State Appellate Defender and I represent the appellate Mr. Tony Harris. Your honors, today I'd like to start by addressing the first two trial issues in the case, issues one and two from the briefs, and then I'd also like to discuss the sentencing argument and how People v. Reyes impacts this case. Your honors, this is an attempt murder case in which the evidence of the specific intent to kill was so closely balanced that any one of a number of trial errors that took place in this case could have resulted in Mr. Harris' conviction. First, it's undisputed that the trial court erred when it failed to give nine jurors the opportunity to respond to whether they understood the Zare principles. The state does not dispute this error, so the only issue in dispute here is whether the evidence is closely balanced under the plain error rule to warrant reversal. The state's evidence of the specific intent to kill in this case was so closely balanced. In fact, the only evidence that the state had to prove intent to kill was two things. And that was Officer Logan's assumption that the shooter was shooting in his direction and the jailhouse informant's testimony that he claims to have overheard Harris saying that he shot at the police. Those two things. And both of those were incredibly weak because Officer Logan admitted that he didn't even see the shooter. That he didn't hear any bullets whizzing past him. He didn't hear any bullets strike any of the structures around him. He merely assumed that the shooter was shooting in his direction because he was able to see the muzzle flashes. But that was inconsistent with the physical evidence in the case. Officer Logan's testimony was inconsistent with the physical evidence because there were no bullet strikes found anywhere near where Logan claimed to have been standing. In fact, the only bullet strike in the area was on the next block over on West Moreland Street, and it was a bullet from a gun that wasn't even associated with this case. So we have Logan's testimony, which is inconsistent with the physical evidence. So does the record show no bullet strikes were discovered? Yes. No bullet strikes discovered. And the second piece of evidence is even weaker. But that supports either side, doesn't it? I mean, that's kind of a neutral fact. You view that as supporting your position that they weren't fired in his direction because they weren't discovered. They just weren't discovered. Well, the evidence in the case is that there were no bullet strikes found in the specific area where Logan claimed to have been standing. So that means there were no bullets struck in that area at all. So the other piece of evidence, Reginald Anderson's testimony that he overheard here say that he shot at the police. As we know, the testimony of a jailhouse informant is inherently suspect. And in this case, Reginald Anderson was a five-time convicted felon. He had multiple prior convictions for crimes of dishonesty, burglary, residential burglary, retail theft, obstruction of justice. So Reginald Anderson would have said anything. And Reginald Anderson's testimony and Officer Logan's testimony were both rebutted by the state's own evidence. Because according to Detective McDaniel, Harris told him, it was an easy shot. If I wanted to kill him, I could have killed him. In essence, saying that there was no intent to kill. Because if I had intended to kill, he would have been shot. It was an easy shot. And so because both of these pieces of evidence that the state used to support intent to kill were weak, impeached, inconsistent with the physical evidence, and then rebutted by the defense's evidence, Harris's testimony and Haywood's testimony. Under those circumstances, the evidence of intent to kill was far from overwhelming in this case, your honors. And case law tells us that when the evidence is close on just the mental state alone, that it's a closely balanced case warranting reversal. Your honors, and the next two errors in the case also bear directly on this element of the specific intent to kill. First of all, counsel was ineffective for allowing damaging false testimony of his own witness to go uncorrected. It is undisputed that Haywood testified falsely when he said he had a prior conviction for murder. Haywood did not have a prior conviction for murder. He had a prior conviction for ag UUW, which is a class 4 offense. And at the time of his testimony, that statute had already been declared unconstitutional. But yet, on direct examination, when defense counsel asked him about his priors and he said he had a murder conviction, counsel did not correct it at all. And under the rules, counsel has a specific duty to correct known false testimony of his witness. And in this case, his failure to do so could have only been the result of incompetence, because it means that either defense counsel didn't know his witness's background and was unaware that Haywood didn't have this murder conviction, or that he was aware that Haywood testified falsely and didn't correct it. But either way it goes, he allowed his key witness to be impeached in the worst way with the murder conviction unnecessarily, Your Honor. And this is a really prejudicial issue because Haywood was a key defense witness. Besides Harris, Haywood was the only witness who could undercut the state's confession evidence that Harris supposedly said that he shot at the police. But yet, Haywood was allowed to be impeached by an unnecessary conviction. And the prejudice is even more apparent given the fact that the prosecutor at trial pounced upon this false evidence and emphasized it in rebuttal closing argument. The prosecutor said, but look at the other friend, Eugene Haywood, in custody on murder. Ivan Ellis, in custody on federal drug charges. Do you think it's a far leap that the defendant would fire at Logan? So the prosecutor takes this false testimony and uses it not only to impeach Haywood's testimony, but also to infer Mr. Harris' guilt. The prosecutor was in essence saying, hey, if he has friends that are murdering people, is it a far leap to believe that he would also try to murder Officer Logan? And so the prosecutor exacerbated counsel's blunder, which is why this was all the more prejudicial, Your Honor. And the next instance of ineffective assistance was when counsel failed to object to the prosecutor's closing argument that you can't see a muzzle flash unless the barrel is pointing at you. There had been absolutely no expert testimony establishing that you cannot see a muzzle flash unless the barrel is pointing at you. In fact, when the firearms expert, when the prosecutor called the firearms expert to testify, the prosecutor asked him nothing about this whole visibility of muzzle flash thing. But yet the prosecutor put before the jury as if it was an established fact that you can't even see a muzzle flash unless the barrel of a gun is pointing at you. And Officer Logan's testimony didn't give the prosecutor a reasonable basis for this argument because all that Officer Logan testified is that you can't see a muzzle flash unless the gun is between the two people. He said nothing about the barrel pointing at the person. Officer Logan said the fact that I could see the muzzle flash would mean that the person was standing on the opposite side of where the gun was. The gun was between myself and the person firing. So all Logan is saying is he wouldn't have been able to see the muzzle flash unless the gun was between the two people as opposed to, you know, not between them. But in this case, even Officer Logan's testimony doesn't make any sense because as I explained in my opening brief, the gun does not have to be between two people to see a muzzle flash. The gun could be here, the gun could be here. The gun could be in a number of angles to be able to see a muzzle flash. So the prosecutor takes Logan's faulty testimony that doesn't even make sense and then embellishes that in a way to make it seem as even more stronger evidence of specific intent to kill. And counsel did not object. And this is why it's so prejudicial because all of these blunders go directly to the issue of specific intent to kill that was so closely balanced. And under these circumstances, Your Honor, it's a reasonable probability that but for counsel's errors, this case could have been different. If you have no questions about that, I'd like to move on to the sentencing claim in People v. Reyes. Your Honor, 17-year-old Tony Harris will spend the rest of his life in prison for an offense in which no one was injured or even came close to being injured. Because of People v. Reyes, it is now clear in Illinois that an Eighth Amendment challenge under Miller applies to a term of life sentence like Harris's as long as it constitutes a de facto life sentence. The state in this case does not dispute that Mr. Harris's sentence is a de facto life sentence. According to the CDC, Harris's life expectancy is 64.9 years. With the sentence that Harris currently has, even if he receives every single day of his good time, which is not guaranteed, but assuming he receives every single day, he will not be released until 64, which is right at his life expectancy. So this sentence will consume his life, Your Honors. And while Harris's de facto life sentence was discretionary as opposed to mandatory in Reyes itself, Reyes does not limit its holding to simply mandatory de facto life sentences. In fact, the Supreme Court, the Illinois Supreme Court, since Reyes has remanded several discretionary de facto life sentence cases back to the appellate court for reconsideration in light of Reyes. In cases just like Harris's, where there is a discretionary de facto life sentence with that mandatory add-on. And even the appellate court, and I noted this in my brief, the appellate court, let me give you the names of those cases, People v. Allen, People v. Manitti, People v. Rodriguez. These are all de facto discretionary life sentence cases that the Illinois Supreme Court has remanded back to the appellate court for reconsideration in light of Reyes. And also, Your Honors, in People v. Nieto, which I cited in my briefs, People v. Nieto indicates that even the United States Supreme Court is not limiting Miller to just mandatory de facto life sentences. Nieto says that Montgomery v. Louisiana, and I'm quoting, Montgomery indicates that not even an exercise of discretion will preclude a Miller challenge. So under Reyes, remand for resentencing is warranted in this case, because in imposing Mr. Harris's de facto life sentence, the trial court was mandated to impose a mandatory 20-year firearm enhancement regardless of Harris's youth and the special mitigating circumstances of his youth. But I'd like to remind the court that this court doesn't even really need to reach the constitutional sentencing claims that I've raised in my brief. I've raised an Eighth Amendment challenge, a proportionate penalty challenge, but this court doesn't even need to reach the constitutional sentencing claims, because remand for resentencing is necessary in this case because this is an excessive sentence. This is a flat-out excessive sentence, which I also raised in my brief. A de facto life sentence for a 17-year-old kid for an offense where no one was injured is clearly excessive. The seriousness of the offense does not fit the punishment. Mr. Harris's sentence had been enhanced twice already, once by virtue of Officer Logan's status as a police officer, and also because of the mandatory 20-year firearm. So even with the minimum 40-year sentence in this case, that would have been a substantial sentence for a kid for an offense where no one was injured. But the judge bumps that up 15 more years, and gives him 55 years for this case, Your Honor. And that was totally an abuse of discretion. That sentence fails to take into account Mr. Harris's age, the mitigating circumstances of youth, as explained in Miller, and the constitutionally mandated objective of restoring an offender to useful citizenship. And one of the cases that I cited in my brief, People v. Brown, says that it is not enough for the court just to say that they have considered the defendant's young age and their background. The court says that's not enough. They have to consider the special circumstances of youth. They have to consider that they have diminished culpability, heightened capacity for change, prone to impulsivity and peer pressure, lack of judgment. All of these things are the special mitigating circumstances that they have to consider, besides just considering their age. And in People v. Brown, the appellate court found that a 50-year sentence for an attempt murder case, a 16-year-old who committed attempt murder was sentenced to 50 years. Even where the trial court acknowledged that I considered this defendant's young age and his background, I read the PSI, the appellate court said that is not enough. The court did not give any indication that the court considered the special circumstances of youth. And the court in People v. Brown found that that was an excessive sentence and that that sentence failed to satisfy the constitutional objective of restoring that young man to useful citizenship. And the court said specifically because the defendant would not complete his sentence until he's 66 years old. Thank you. This is just like in the Essent case, Your Honors. This sentence will not restore Mr. Harris to useful citizenship. He will not get out of prison, Your Honor. The trial court in this case, just like in Brown, mentioned the defendant's young age and the background and PSI and all that, but gave no indication that the court considered the special mitigating circumstances associated with Mr. Harris' youth, Your Honor. Mr. Harris' sentence provides him no chance of ever being restored to useful citizenship because he will be at least 64 before he can be released. As such, this court does not need to reach the constitutional sentencing claims. It could send this case back for resentencing because the court abused its discretion in sentencing Mr. Harris to a de facto life sentence for an offense in which no one was injured, Your Honor. So Harris respectfully requests that this court reverse and remand this cause for a new trial or alternatively vacate the sentence and remand for a new sentencing hearing before a different judge. I have a question. I'm sorry. I have a procedural question based on the record. Judge Brown's name appears as the presiding judge in this appeal. Did he try the case and then Judge Curry sentenced? Was there a difference? Was there a change? I don't believe... No, Judge Curry tried the case and sentenced the defendant. So am I looking at the wrong file? You've got on the face, don't you have David Brown as judge presiding? On the cover page, you might be correct about that. But in the transcript, he was not the judge that heard that. Okay, so I looked at the sentencing order and it does bear Judge Curry's signature and then some of Judge Curry's remarks in the transcript are very characteristic of what we've seen in other cases where Judge Curry discusses the life expectancy of this particular individual and then designs the sentence with that life expectancy in mind. I believe that this court has expressed our view that that pattern is unacceptable. Do you know if this case fell within the time frame of the pattern that we criticized in prior cases? I'm not familiar with the other cases that you are... Okay, alright. Then I will do my own research. I'd be happy to find out and to... I'll look at it. I think Judge Curry's remarks, you haven't addressed this, but his remarks show his intent to impose a life sentence. Yes, I can address that if you'd like. Would you? Sure. Judge Curry's remarks show just tremendous hostility and bias against the client. One of the comments that Judge Curry made to a defendant is, there's a temptation on my part to just max you out. To max you out because there's a strong argument for that. There is just a strong argument for that. So Judge Curry's belief that there's a strong argument for a 100-year sentence for a 17-year-old kid for this kind of crime shows that Judge Curry was completely hostile towards Mr. Harris and unwilling to follow the constitutionally mandated objective of restoring him to useful citizenship. Judge Curry also considered a factor that's inherent in the offense of attempt murder of a police officer. Judge Curry said that Harris had, and I'm quoting, a victim who protects people. But we know from case law that a factor that was inherent in attempt murder of a police officer is the fact that the victim was a police officer. And so Judge Curry is using as an aggravating... I think you've addressed my question, and I thank you. Okay. I don't want to go over to you. Sure. Thank you. Thank you. Any other questions? No. Thank you, Ms. Murray. Mr. Hunter? May it please the court, counsel, in my initial brief, I had asked that this court hold the case in abeyance until People v. Seveus decided that it's a case out of this court. The issue that I expect and hope the Supreme Court will address is what the defendant must show under the first prong of the plain air rule when claiming the trial judge failed to comply with Rule 431B. Does the defendant have to show simply that the evidence was closely balanced, or must the defendant also show that the error had some impact on the jury verdict? I believe that issue will be decided in Seveus, but if you prefer not to wait until that is decided, I respectfully disagree that the evidence was closely balanced here. How far along has Seveus been? It's been around a long time, and it's been argued, and I expect a decision anytime soon. I checked Friday on the Supreme Court website, but it was not listed under any anticipated opinions. So... Continue, Mr. Murray. Okay. In this case, we have the difference between quality of evidence and quantity of evidence. We don't have a large quantity of evidence, but we have a quality of evidence. We have Whitney Perret, the defendant's friend, who was playing basketball with this group of people. She testified that Austin Wood asked if he could put a handgun in her purse  and the police car actually stopped. That was Officer Logan, and he questioned Austin Wood. Austin Wood ran down the alley. Logan followed in pursuit. Austin Wood got away, and Logan was walking back towards the alley. This was in the evening around 9 p.m., so it was dark out. Whitney Perret testified that the defendant, for some unknown reason, ran up and grabbed the handgun out of the purse that Wood had placed in there, and he ran down the same alley that Logan and Wood ran down. Whitney heard three gunshots, and the defendant came back, and she stated something to the effect, the police were shooting at Wood. No, he corrected, the defendant corrected Whitney and said, no, that was me, I fired those shots. So we have the defendant's admission to his friend, which is very strong evidence. Then we have Officer Logan's testimony. He was walking back. He heard the shots. He saw the muzzle flashes. Just incidentally, there's no evidence in the record how you can see a muzzle flash if it's not pointed at you, if it's pointed at you, and I had asked that that part of the defendant's brief be stricken. There was no evidence whatsoever when or why or how you can see the muzzle flash, but I've never been shot at. I assume that you would probably know you were being shot at. He saw the muzzle flashes. He ducked down just because the defendant is a poor shot or because the police could not find any evidence that does not negate his intent to kill. You shoot at somebody in a city populated by people, and you purposely know that the officer's coming down there. The circumstantial evidence is overwhelming that you shot at the person with the intent to kill them, and I'm sure the jury realized that, and that's reasonable inference from the evidence. Now the other evidence of the jailhouse informant and the defendant's friend who mistakenly said that he had a murder conviction when he did not, that evidence is not very strong, but even if you just consider the testimony of Parrott and Logan, that evidence is beyond a reasonable doubt to prove that the defendant committed the offense. The fact that the defendant's friend mistakenly said that he had a murder conviction was little value because the jail informant's testimony that the defendant had said something like, what are you in for, and the defendant responded, busting at the police, which means shooting at the police. So I ask that in your prudence that you wait until Sebby is decided, but if you don't want to wait, you can surely find that the evidence was not closely balanced, which the people contend is the situation here. What is the evidence of mental state? The mental state is you have to have the intent to kill. I know what you're saying, but what is the evidence? The evidence is the circumstantial evidence that the defendant fired the gun in the direction of the police officer, and the circumstantial evidence that the defendant intended to kill. You can't see intent or feel intent. You have to discover intent or find that there is intent by the circumstances. I believe those circumstances here, firing a gun at a person who knows is a police officer in a crowded city, anybody could find reasonable that that was reasonable inference that it was an attempt to kill the officer. You said it was dark. Yes. What is the evidence that you knew that it was a police officer that he was shooting at? Well, the defendant made a statement that it would have been an easy shot if he wanted to kill Logan. Well, Logan testified that he was under a streetlight when he was walking down, when he heard the shots and saw the muzzle flashes. So the defendant was hidden on a porch, on a house along the alley, and the officer was standing in the light of this streetlamp. What caused everybody to flee in the first place? He grabbed the gun out of the person and everybody fled. Yes. What was the precipitating event for that? Yes, that was because Officer Logan pulled up to talk to Austin Wood. Austin Wood fled and the police officer fled after him and the defendant grabbed the gun and went down the alley. So circumstantially, maybe he knew the officer was in the area? Well, he knew the officer was in the area. I think that is a reasonable inference from the evidence here. The other people in the group, they saw the police, they either fled or they went to the 7-Eleven store. Who was the defendant running from? Was he being shot at by anybody else? No, the defendant just took it upon himself to grab this handgun and run down the alley after Wood and Logan. So the jury could have found that he was discharging the gun into the air so that everybody would know where he was. But that's not necessarily reasonable. That's not necessarily reasonable. The jury deserves the... So there's more than one inference that can be drawn from discharging the weapon. Yes. But it's your position that the jury inferentially he was shooting at you. Correct. With regard to the second issue, I touched upon it initially. The defendant received ineffective assistance of counsel because the defendant alleges that the defendant's attorney failed to correct the error that the Harris' friend had a murder conviction. Well, as I said before, even if you discount the two felons' testimony, the other evidence was sufficient to prove the defendant guilty beyond a reasonable doubt. The counsel's performance was probably deficient, but the defendant can't show that he was prejudiced by the trial counsel's deficient performance. I believe the evidence is overwhelming that the jury found that the defendant fired at the officer with intent to kill based on all of these facts. The second issue was the muzzle flashes, I guess. With respect to those, we don't know. There's not anything in the record when and how you can see a muzzle flash. But certainly, if a gun is pointed at you, you can see a muzzle flash. And that was Officer Logan's testimony. With respect to the defendant's prison sentence, there are several First District cases that have held that such sentences were against the Proportionate Penalties Clause. And they vacated the sentence and remanded for resentencing without the 25 or 20-year mandatory gun enhancement. One of those cases is Peeble v. Gibson, which the defendant cited in her case. That PLA was allowed on November 23, 2016, and it's pending before the Supreme Court right now. I submit that the Supreme Court's decision in Gibson will be dispositive of this issue regarding the defendant's sentence. So it is that you hold the case in abeyance until Gibson is decided. However, Reyes does not apply in this situation. In Reyes-Miller, the U.S. Supreme Court case, and Reyes both held that it is unconstitutional or against the Proportionate Penalties Clause to have a mandatory minimum sentence, which is a life sentence. And that's what occurred in Miller. In Reyes, our Supreme Court extended that to de facto life sentences. In Reyes, the defendant was 16 years old. He was sentenced to a total of 90 years imprisonment, which was the minimum sentence. And he was first eligible for release at the age of 105 years of age. Of course, that was a de facto sentence, and the Supreme Court vacated that sentence and remanded the cause for resentencing. Here, the defendant was 17 years old. He shot three times in the direction of a police officer. He was sentenced to 55 years in prison. The trial judge gave him 35 years, which is 15 years above the minimum. And then with the 20-year add-on of the firearm sentence enhancement, he was sentenced to 55 years, but he was served. The trial judge measured that sentence by the life expectancy of the defendant. Did that increase the sentence? I believe he sentenced the defendant to this long of a sentence because he found that this defendant was a danger and that he wanted to give him a long sentence, even if it was not a life sentence. He'll be 64 years old when he's released from prison. But I believe it was the trial judge's belief that this defendant was a dangerous criminal that had to be taken off the streets. And Miller and Reyes both say that a trial judge can give a discretionary life sentence. He just can't give a life sentence based on mandatory minimum factors. Would you speak to opposing counsel's point or request that this matter be remanded to another sentencing judge? Originally, I thought perhaps the trial was conducted by Judge Brown and Judge Corey. It hadn't presided over the trial and maybe didn't have a stake in the sentence. But it seems to me there's simply a mistake somewhere and Judge Corey did preside over the trial and then announce the sentence. Would you speak to our authority to direct another judge other than the trial court judge who presided over the jury trials? Yeah, that is an extraordinary remedy. Usually when you remand it back to the trial court, the sentencing judge has to re-sentence the defendant. In order to find that it needs to be sent to a different judge, you'd have to find some hostile prejudice against the defendant by the trial judge. I don't believe that's borne out by the record. So if you do decide to remand the case for re-sentencing, Judge Corey should be the sentencing judge since he presided over the trial and he gave the sentence. You don't think that calculating the sentence to try to ensure that it's a life sentence is a showing of hostility? No, it's not a showing of hostility. It's the trial judge's discretion in finding that this is a dangerous criminal and that he should be taken off the streets. Most of the gun violence in this country are caused by a small group of people who use firearms over and over. Society and police chiefs across the country have asked for tougher laws to keep these repeat criminals off the street to prevent all these shootings. It's kind of ironic that the three cases from the first district in Chicago remanded the cause for re-sentencing when they have the greatest problem and they would want to keep these criminals off the street to prevent any more shootings. Maybe they were looking at the facts of the specific case and not the general social concern. Perhaps. Are you aware of any comments that Judge Corey may have made in other records after receiving cases back from this court for re-sentencing about disdain for this court's decisions directing him away from a life for life policy? No, I'm not aware of any. If you don't have any questions, I ask that you hold the case in abeyance. Thank you, Mr. Leonard. Thank you. Your Honors, counsel stated that this court should hold this cause in abeyance for People v. Sebi to be decided. Your Honors, this court should not hold this case in abeyance for Sebi. The Supreme Court has not required any additional showing of prejudice. In People v. Heron, the Supreme Court said when an error occurs in a closely balanced case, the error is actually prejudicial, not presumptively prejudicial. The Supreme Court has stated in People v. White case that the state cited, in a closely balanced case we should err on the side of fairness so as not to convict an innocent person. And so this court should rule in line with the controlling Supreme Court precedent that we have right now that says in a closely balanced case that plain error is established. And even if an additional showing of prejudice were required, this would be a case that meets it. Because in this case we have a police officer testifying that he believes that the defendant was shooting at him. The state obviously believes he did it because the defendant is charged in the offense. So if we have a jury that doesn't even understand the presumption of innocence, doesn't understand the fact that the state has to prove the case beyond a reasonable doubt, we don't know if the jury was able to follow those standards in this case, Your Honor. And counsel talked about the quantity versus the quality of the evidence in this case. And I just want to remind this court, if we look at the quality of the state's evidence, the quality is that Reginald Anderson was a jailhouse informant, that he was a five-time convicted felon. The quality of the evidence is that Officer Logan did not see anything. He was standing under a spotlight looking into pitch black darkness. That's the quality of the state's evidence. And the state also mentioned Whitney Parrott's testimony as establishing Mr. Harris' guilt. Whitney Parrott's testimony was simply that the defendant said, that was me. When she said, did you hear the shooting, he said, that was me. That does not show intent to kill. That at best shows that he was the shooter. It does not show that he was shooting directly at Logan or had an intent to kill. So her testimony does not establish intent to kill. And when we look at quality as well, we have to consider the fact that even the state's own evidence rebuts the intent to kill. That Detective McDaniel's testimony rebuts an intent to kill, Your Honor. And moving on to the ineffectiveness. Let me interrupt you for a second. Sure. I thought that what Mr. Leonard asked us to hold the case for was a decision in Gibson. Is that not correct? Both. Both. So do you know what Gibson is? Yes, that's with regard to the sentencing claim. But he also asked to hold the case in advance for Sebi with regard to our Zaire issue. Okay. Did you want to address that? Gibson? Yes, sure. I'll move down to that. Your Honor, Gibson is still good law. As I stated in my reply brief, the Supreme Court has said that as a matter of public policy, the presidential effect of an appellate court opinion is not weakened by the fact that a petition for leave to appeal has been granted and is pending in that case. So People v. Gibson is still good law, Your Honors. And as I stated earlier, that this Court doesn't even need to reach the constitutional issues in this case because remand for resentencing is warranted under the excessive sentence argument as well. And I wanted to mention something. But you're asking for a new trial. Yes. I'm asking for a new trial first and foremost. Alternatively, these sentencing claims will come into play. Yes. So that's my question. Why not wait for Sebi? Why not wait for Sebi and resolve the issues with the latest guidance? The client is facing a very long period of incarceration at this point. And there's two options. We either affirm the conviction and remand for sentencing, or we give you a new trial because of the Zaire issue. So why not wait? Because we also have an ineffective assistance of counsel claim that has nothing to do with Plain Air or Sebi or Gibson. We have an ineffective assistance of counsel claim where counsel committed two major blunders that affected the – I appreciate your answer. That's a good answer. Thank you. And can I mention one more thing? Counsel say that Haywood's false testimony that he had a murder conviction was not prejudicial. But that's almost disingenuous given the fact that the prosecutor at trial benefited from it. That the prosecutor at trial took advantage of that blunder and highlighted that false testimony. The prosecutor would have known that that testimony was false. Haywood was listed on the list of witnesses and discoveries. So the prosecutor would have got his rap sheets and everything like that, too. But yet the prosecutor took advantage of that false testimony and used it to infer Harris' guilt from that false testimony, Your Honor. One minute. So this Court has no further questions. I ask that this Court reverse the convictions case and remand for a new trial. I do have one further question. And I'd like to follow up by asking you the same question that I asked Mr. Leonard. And my question is, are you aware of any comments on the record by Judge Curry that expresses disdain with regard to decisions from this Court remanding for resentencing and sort of, you know, disapproval of the life-for-the-life policy that has been expressed in other cases? The reason I ask that question is not because I'm aware of comments that he's made on the record. I'm wondering if there are comments that he's made on the record, then perhaps we need to consider whether he'll follow a directive on remand to him to reconsider the sentence. If there are no other comments on the record and he has always followed the directions of this Court with regard to resentencing, then why shouldn't we remand it back to Judge Curry? So that's my question. Are you aware of any other decisions where he expressed with disdain remarks on the record, you know, indicating he didn't want to follow the directives of this Court? No, I am not. But I think we have enough on this record to show that he is hostile towards Mr. Harris and towards this type of offense, that he believes that Mr. Harris has served 100 years for this, that he should have been maxed out for this offense. I believe that there is enough in this record to show that Judge Curry cannot follow the constitutionally mandated objective of restoring Mr. Harris to useful citizenship, and he cannot follow Miller either and consider the mitigating circumstances of Mr. Harris's age. I appreciate your answer. Thank you. Thank you. So if this Court has no further questions, we'd ask that the Court would reverse the conviction, remand for a new trial, or alternatively vacate the sentence and remand for resentencing. Thank you. Thank you, Ms. Ware. Thank you, Ms. Brooks, for your argument today. I appreciate this matter and your advisement. Thank you. It was a written decision. We are adjourned. We now have the day off for recess from now. Thank you.